UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FREDRICK WELLS                                                              PLAINTIFF

V.                                         CIVIL ACTION NO. 5:19-CV-124-KHJ-MTP

PIKE COUNTY, et al.                                                       DEFENDANTS

ORDER

This matter is before the Court sua sponte for consideration of summary
judgment. For the following reasons, the Court notifies the parties of its intent to
enter summary judgment sua sponte and gives the parties 21 days to respond.

I.      Background

This case arises from pro se Plaintiff Fredrick Wells's allegation of various
constitutional violations that occurred during his incarceration at Pike County Jail
("the Jail"). Omnibus Tr. [51] at 8.[1] While he was on supervised release from the
Mississippi Department of Corrections ("MDOC") in May 2019, a Mississippi
Bureau of Narcotics officer pulled him over at a traffic stop. *See id.* at 8, 10–12. The
officer took him to the Jail for possession of a controlled substance. *Id.* at 9, 11–12.
On June 8, while he was awaiting transfer back to MDOC, fellow inmates allegedly
attacked him. *Id.* at 10.

---

[1] The facts set out in this Order come from Wells's testimony at the *Spears* hearing
held on September 8, 2021. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).
Allegations made at a *Spears* hearing supersede the claims alleged in the complaint. *Flores
v. Livingston*, 405 F. App'x 931, 931–32 (5th Cir. 2010) (per curiam) (citing *Riley v. Collins*,
828 F.2d 306, 307 (5th Cir. 1987)).

According to Wells, five fellow inmates came to his cell and asked for his property. *Id.* at 17–19. He refused and told them he was "just passing through" before his transfer to MDOC. *Id.* at 18. That refusal led to an argument, where those five inmates attacked him, and five more allegedly joined in on the attack shortly after. *Id.* at 18–19, 21.

During the attack, Wells pushed a buzzer in his cell to call the tower officer in his unit. *Id.* at 19. He alleges "[s]omeone came and [he] told them [he] needed some medical assistance, and they got off the buzzer." *Id.* In other words, a tower officer responded to the buzzer, but allegedly did not come to stop the attack. *Id.* Wells then went to a wall phone to call his family members and notify them of the altercation. *Id.* Officers then came to Wells's cell and transferred him to Southwest Regional Hospital. *Id.* at 22–23. At the hospital, a CT scan revealed a skull fracture, and Wells required 26 sutures on his face. *Id.* at 20, 23. Wells was then sent back to the Jail, where he received antibiotics and inflammation medication, but not pain medication. *See id.* at 23–24.

Wells—with help from his sister-in-law Demetrice Wells, who was an attorney at the time—requested charges against the fellow inmates, but they were never pressed. *Id.* at 19–20, 22. Defendant Investigator Chris Bell did not get a victim-impact statement from Wells or notify him of his attackers' identities. *Id.* at 20.

Wells filed his pro se [1] Complaint on November 18, 2019. He asserted claims against Pike County, Sheriff Kenny Cotton, "Unknown Medical Provider of

Pike County," Chief of Security Anthony Johnson, "Lieutenant Lumpkins," and Investigator Chris Bell.[2] *See* [1] at 2–5. The Court held a *Spears* hearing allowing Wells to explain his claims against each Defendant. *See* Minute Entry, September 8, 2021.

Wells then retained counsel on January 13, 2022. *See* [35]. When his counsel failed to appear at a pretrial conference on November 9, 2022, the Court ordered his counsel to show cause as to why it should not impose sanctions for his failure to appear. Order [42]. The Court then held a show-cause hearing and a second pretrial conference simultaneously on November 29, 2022. The Court ultimately did not impose sanctions on Wells's former counsel.

During the pretrial conference, the Court—after consulting the parties—determined Unknown Medical Provider and Anthony Johnson should be dismissed from the action. *See* Order [44]. The Court also set a trial date for February 27, 2023. *See* Text Order, November 30, 2022. But because of physical illness and weakness, Wells's counsel moved to withdraw on December 16, 2022. *See* [45]. The Court granted the motion and gave Wells a chance to retain counsel or notify the Court of his intent to proceed pro se on or before February 10, 2023. Order [46]. Wells conveyed he would proceed pro se. Resp. [49].

The Court held another pretrial conference with Wells and Defendants' counsel on June 27, 2023. At the conference, the Court notified Wells of its intent to

---

[2] Wells also sued Pike County Jail as a separate Defendant, but the Court dismissed it because it is an extension of Pike County. *See* Order [15] at 1 (citing *Tuesno v. Jackson*, No. 5:08-CV-302, 2009 WL 1269750, at *1 (S.D Miss. May 7, 2009)).

enter summary judgment sua sponte. Specifically, the Court told Wells it would issue a written order describing the reasons why it considers summary judgment appropriate and allow the parties an opportunity to respond. Consistent with that notice, the Court considers whether summary judgment is appropriate on Wells's remaining claims against Pike County, Sheriff Kenny Cotton, Investigator Chris Bell, and Lieutenant Unknown Lumpkins.

       II.     Standard

       District courts may grant summary judgment sua sponte "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *D'Onofrio v. Vacation Pubs., Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (citations omitted). Summary judgment is appropriate if "no genuine dispute as to any material fact" exists, and the defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). A dispute is "genuine" if evidence demonstrates that a "reasonable [factfinder] could return a verdict for the [plaintiff]." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views all facts, evidence, and reasonable inferences in the plaintiff's favor, *see Scott v. Harris*, 550 U.S. 372, 378 (2007), but "unsubstantiated assertions are not competent summary judgment evidence," *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

III.   Analysis

A.  Pike County

Wells's claim against Pike County concerns the conditions of his confinement at the Jail.[3] *See* [51] at 41. Specifically, he challenges its method of housing inmates in an open zone because it permits inmates to have contact with each other, which he argues allowed the other inmates to attack him. *Id.* at 41. He expressed concern for the other "guys having murder charges and everything, and [he] could be housed around one of them now . . . ." *Id.* at 43.

Wells's claim against Pike County is not a constitutional violation because an "inmate does not have a protectable liberty or property interest in his custodial classification[,] and an inmate's disagreement with a classification is insufficient to establish a constitutional violation." *See Poree v. Akwitti*, 834 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). The Northern District of Mississippi has rejected a similar claim on a motion for a temporary restraining order prohibiting officials at a prison from housing mentally ill inmates in proximity to other inmates. *See Gillette v. Core Civic*, No. 3:18-CV-106, 2019 WL 3884857, at *1 (S.D. Miss. Feb. 13, 2019). Specifically, it

---

[3] At his *Spears* hearing, Wells also challenged the traffic stop and underlying arrest that sent him to jail as illegal. *See* [51] at 36–37. The Court notified him that he may need to bring that claim in a separate lawsuit because it was not in his original Complaint. *Id.* at 37–38. But even if that claim were part of this action, Wells cannot assert it because he was convicted of the charges for which he was arrested and has not challenged that conviction. *Id.* at 39–40; *see Heck v. Humphrey*, 512 U.S. 477, 487–88 (1994) (holding plaintiff must prove criminal conviction reversed on direct appeal, expunged, or otherwise invalidated before raising civil claim over illegal conduct giving rise to invalidated conviction). For those reasons, Wells has no such claim against Pike County.

concluded the plaintiff could not show a substantial likelihood of success on the merits of his claim because they had no constitutional right not to be housed near a mentally ill inmate. *See id.* at \*2 (citing Supreme Court and Fifth Circuit precedent). It also noted that "[p]risoner classification and housing is a matter squarely within the 'broad discretion' of prison officials, 'free from judicial intervention' except in extreme circumstances." *Id.* (quoting *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990)).

Because Wells has no constitutional right to a particular housing assignment, he cannot allege a violation of that right. And having no other claim against Pike County, the Court intends to enter summary judgment for Pike County and dismiss it from this action.

B.  Sheriff Kenny Cotton

Wells next claims he wanted Sheriff Cotton to bring criminal charges against the inmates who attacked him, but Sheriff Cotton failed to do so. [51] at 25–27. He also claims that because Cotton is "Sheriff," he should be responsible for the jail's employees that allegedly failed to do their jobs. *Id.* The Court addresses each alleged claim in turn.

1.  Failure to Bring Criminal Charges

Wells's first claim against Sheriff Cotton fails because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). "[T]hird parties do not enjoy a constitutionally protected right to have wrongdoers criminally investigated or

prosecuted, even if a third party is the victim of an alleged wrongdoer's criminal

acts." *Lewis v. Csaszak*, No. 1:20-CV-256, 2022 WL 6873673, at *5 (S.D. Miss. July

13, 2022), *report and recommendation adopted*, 2022 WL 4483830 (S.D. Miss. Sept.

27, 2022) (collecting cases and concluding plaintiff had no § 1983 claim against

prosecutor for failure to press charges against his fellow inmate-attacker). It follows

that "[t]he decision to file or not file criminal charges . . . will not give rise to section

1983 liability." *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). Because Wells

has no constitutional right to the prosecution of his attackers, the Court intends to

enter summary judgment on that claim against Cotton.

> 2.  Supervisory Liability

Wells's allegation that Cotton is responsible for the jail employees' failure to

do their jobs is an attempt to impose supervisory liability on him. "[G]overnment

officials may not be held liable for the [allegedly] unconstitutional conduct of their

subordinates . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting principle as

applied to federal agents). More specifically, a "[s]heriff may not be held liable

under section 1983 on the basis of vicarious liability for the acts or omissions of his

deputies." *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (citing cases and

rejecting wrongful-death beneficiaries' attempt to impose liability on Sheriff for his

deputies beating decedent). Even assuming the the Jail employees were Sheriff

Cotton's subordinates, he cannot be liable for their conduct. For that reason, the

Court intends to enter summary judgment on that claim and dismiss Sheriff Kenny

Cotton from this action.

C. Investigator Chris Bell

Wells's two claims against Bell are that he did not notify Wells of his attackers' identities and he did not get a victim-impact statement from Wells. *See* [51] at 30–32. Neither of those omissions violates any constitutional right. Along with having no right to have his attackers prosecuted, Wells does "not have any constitutional right to have another individual investigated . . . ." *Grizzle v. McCollum*, No. 6:21-CV-447, 2023 WL 2396914, at *2 (E.D. Tex. Jan. 18, 2023), *report and recommendation adopted* 2023 WL 2390669 (E.D. Tex. Mar. 6, 2023) (collecting cases); *see also Lewis*, 2022 WL 6873673, at *5. Because Wells has no right to have his attackers investigated or prosecuted, Bell had no constitutional obligation to provide Wells with their identities.

Wells had no constitutional right to a victim-impact statement either. Victim-impact statements are merely evidence to assist sentencing authorities in capital-punishment cases. *See, e.g., United States v. Davis*, 609 F.3d 663, 684 (5th Cir. 2010) (noting government may introduce victim-impact evidence identifying the victim and extent and scope of injury); *United States v. George*, 477 F. Supp. 3d 532, 538 (E.D. La. 2020) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)) (discussing role of victim-impact testimony in capital sentencing). They are not property to which any victim of wrongdoing is constitutionally entitled. For those reasons, the Court intends to enter summary judgment on Wells's claims against Investigator Chris Bell and dismiss him from this action.

D.  Lieutenant Unknown Lumpkins

Finally, Wells alleges Defendant Lumpkins was a lieutenant in charge on the

night of his attack when jail officers failed to protect him. [51] at 32–34. He alleges

she was responsible for the officers failing to see or prevent the attack and not

responding to his call for help on the buzzer. *Id.* at 19, 33–34.

"[P]rison officials have a duty . . . to protect prisoners from violence at the

hands of other prisoners." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (per

curiam) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). But not "every

injury suffered by one prisoner at the hands of another . . . translates into

constitutional liability for prison officials responsible for the victim's safety." *Id.*

(quoting *Farmer*, 511 U.S. at 834). "Prison officials are not . . . expected to prevent

all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003)

(quoting *Farmer*, 511 U.S. at 834).

A failure-to-protect claim against Lumpkins requires Wells to allege that "he

was incarcerated under conditions posing a substantial risk of serious harm and

that [Lumpkins] acted with deliberate indifference to his safety." *Luna*, 59 F.4th at

715 (quoting *Farmer*, 511 U.S. at 834) (reviewing summary judgment). Deliberate

indifference for a failure-to-protect claim requires allegations that Lumpkins was

"(1) aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists; (2) subjectively drew the inference that the risk existed; and

(3) disregarded the risk." *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021) (per

curiam) (citing *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019)); *see also Luna*, 59 F.4th at 715.

Wells's claim against Lumpkins fails for three reasons. First, she was not required to personally intervene because "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006). Second, Wells cannot rely on supervisory liability. *See Ashcroft*, 556 U.S. at 676. To the extent that he seeks to hold her liable for her subordinates' alleged conduct, he cannot do so. Third, Wells cannot rely on mere negligence to assert a failure-to-intervene claim. *Ducksworth v. Woodall*, No. 1:13-CV-486, 2015 WL 1457498, at *4 (S.D. Miss. Mar. 30, 2015) (citing *Daniels v. Williams*, 474 U.S. 327, 333–34 (1986)) (finding plaintiff's failure to assert that defendant acted intentionally to cause him harm reflected mere negligence rather than deliberate indifference); *see also Lesikar v. Med. Staff*, No. 3:01-CV-1464, 2002 WL 441404, at *3 (N.D. Tex. Mar. 19, 2002) (citing Supreme Court and Fifth Circuit precedent) ("[I]t is well settled that relief is unavailable under § 1983 for claims grounded only in negligence").

True, officers generally must take at least some steps to halt violence, such as "giving verbal orders, leaving to get help, and leaving to obtain tools, such as weapons and teargas, to halt the [inmate-on-inmate] violence." *Coleman v. LeBlanc*, No. 19-395, 2020 WL 4679545, at *5 (M.D. La. July 28, 2020) (citations omitted). For example, the Middle District of Louisiana found a plaintiff adequately alleged

10

failure to intervene by asserting three officers "simply stood by and watched as [the plaintiff] was attacked." *Id.* They "did not give any verbal orders to stop and did not retreat to obtain help or tools to stop the violence." *Id.* But Wells does not allege something similar happened here. He only alleges jail officers—not Lumpkins specifically—did not respond to his call for help. And he concedes the Jail got him to the hospital once they saw he was attacked. [51] at 22.

Wells fails to allege deliberate indifference by Lumpkins herself, and his allegations, at most, amount to mere negligence. Because he does not allege a constitutional violation based on deliberate indifference for failure to intervene in the attack, the Court intends to enter summary judgment on that claim and dismiss Lieutenant Unknown Lumpkins from this action.

E. Failure to Exhaust

Even assuming Wells stated valid claims against any Defendants, he admits that he did not exhaust his administrative remedies. *See* [51] at 47–48. The Magistrate Judge even warned him that Defendants "may very well move to dismiss [his] case for not exhausting the administrative remedies." *Id.* at 51.

Although failure to exhaust is an affirmative defense, courts may dismiss for failure to state a claim when the failure is "apparent from the face of the complaint." *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). And allegations made at a *Spears* hearing supersede allegations made in the complaint. *Flores*, 405 F. App'x at 931–32 (citing *Riley*, 828 F.2d at 307). At his *Spears* hearing, Wells conceded that he did not file

11

any administrative grievance: "I [did not] file any administrative remedy at the jail because I [was not] knowledgeable how it may go or how to do it, how to go about it at the jail." [51] at 47. Because Wells concedes that he did not exhaust his administrative remedies, the Court intends to enter summary judgment sua sponte and dismiss this case.

IV.   Conclusion

For those reasons, the Court notifies the parties of its intent to enter summary judgment sua sponte and dismiss this case. The parties have 21 days from the date of this Order to respond.

SO ORDERED, this the 11th day of July, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE